UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 4:12CV609 AGF |
| | ) | |
| STEVEN C. ROBERTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This is an action for breach of a promissory note brought by Plaintiff Bank of America, N.A., against Defendants Steven C. Roberts and Michael V. Roberts, in their individual capacities (collectively, the "Roberts"); and Steven C. Roberts, as Trustee of the Steven C. Roberts Revocable Trust; and Michael V. Roberts, as Trustee of the Michael V. Roberts Revocable Trust (collectively, the "Trusts"). Now before the Court is Plaintiff's motion to compel the Trusts to provide substantive responses to Plaintiff's post-judgment discovery requests. The Trusts have raised various objections in response to the discovery requests, and have asserted, with respect to all requested documents, their privilege against self-incrimination under the Fifth Amendment of the United States Constitution and the corresponding provisions of the Missouri Constitution. For the reasons stated below, Plaintiff's motion to compel is granted.

## BACKGROUND

### I.  The Dispute

On April 3, 2012, Plaintiff filed this diversity action for breach of contract against

all Defendants. *See D*oc. No. 1. On August 6, 2012, the parties notified the Court that they had executed a settlement agreement. *See* Doc. No. 33. On November 19, 2012, in accordance with the settlement agreement, the Court entered a consent judgment against all four defendants, awarding Plaintiff $35,916,969.24. *See* Doc. Nos. 35 & 39. The Trusts separately executed the promissory note at issue and therefore, the judgment stands against the Trusts as well as the Roberts individually.

Thereafter, Plaintiff conducted post-judgment discovery. On May 3, 2013, Plaintiff served Requests for Production of Documents and Plaintiff's First Set of Interrogatories (the "Discovery Requests") on the Trusts. *See* Doc. Nos. 44-1 & 44-2. In the Discovery Requests, Plaintiff seeks documents pertaining to the establishment and operation of the Trusts and the Trusts' property holdings (Requests 1, 11, 13, 15-17, and 20-35); documents relating to the Trusts' purchase, sale, or lease of property after July 31, 2011 (Requests 2, 3, 10, 14, 18); the Trusts' tax documents relating to filings after July 31, 2011 (Requests 4-6, 12, 19); and documents relating to the Trusts' bank, credit, and brokerage accounts from and after July 31, 2011 (Requests 7-9). In Requests 20-35 Plaintiff also seeks all documents regarding sixteen entities in which Plaintiff believes the Trusts have an interest. *See id.*

On June 3, 2013, the Trusts responded to the Discovery Requests, objecting that Requests 1, 5, and 20-35 were overbroad and exceeded the scope of discovery, and that Requests 1-11 and 13-35 were protected by attorney-client and accountant-client privileges. *See* Doc. Nos. 44-3 & 44-4. The Trusts also asserted, with respect to all Discovery Requests, the privilege against self-incrimination under the Fifth Amendment

of the United States Constitution and the corresponding provisions of the Missouri Constitution. *See id.*

On August 20, 2013, Plaintiff filed this Motion to Compel, asserting that the Trusts' objections are conclusory and fail sufficiently to explain the basis for their claim of the privilege against self-incrimination. Plaintiff further asserts that the privilege does not apply to the Trusts and that the Roberts may not assert their personal privileges with respect to Trust documents. Plaintiff also argues that production of the requested documents would not incriminate the Roberts or the Trusts.

In response, Defendants contend that, under Missouri law, Plaintiff has the burden to demonstrate that the privilege is inapplicable and that Plaintiff has not done so. Defendants also argue that the Trusts are not separate legal entities and are so closely identified with the Roberts that the Trust documents are subject to their personal claim of privilege. In the alternative, Defendants assert that even if the contents of the Trust documents are not privileged, the Roberts' very production of the documents could be incriminating and is subject to the privilege against self-incrimination.

In reply, Plaintiff contends that Defendants' invocation of the privilege is speculative, baseless, and insufficient as a matter of law. Plaintiff also argues that regardless of their claim of privilege, Defendants must produce preexisting business records and documents, created before the date of the Discovery requests, in particular those, like tax returns, that were previously disclosed for other purposes. Finally, Plaintiff argues that Defendants' act of producing the documents on behalf of the Trusts is not subject to the privilege against self-incrimination.

Plaintiff has demonstrated compliance with Local Rule 37-3.04 and seeks an order requiring the Trusts to provide substantive responses to the Discovery Requests. The parties have fully briefed the motion. *See* Doc. Nos. 48, 52 & 56.

## II.  **The Trusts**

The Trusts are *inter vivos* trusts[1] established in accordance with Missouri law. Mo. Rev. Stat. § 456.4-401.1(1). Steven and Michael Roberts are each the settlor and sole trustee of his respective trust. The record does not indicate the number or identity of the Trusts' beneficiaries. The Roberts contend that under the terms of the Trusts, trust property is subject to claims against the settlor during the settlor's lifetime. Apart from this contention, the record does not specify the terms of the Trusts.

The Roberts state that they claim the income from the Trusts on their individual income tax returns and do not file tax returns on behalf of the Trusts. They also assert that the Trusts do not maintain records that are separate and distinguishable from the Roberts' personal records.

---

[1]    An "*inter vivos* trust" is a trust that is created and becomes effective during the lifetime of the settlor. The "*inter vivos* trust" is a unique legal entity through which the settlor may transfer property to a trustee reserving for the life of the settlor the beneficial use of the property with the remainder to designated beneficiaries. To create an *inter vivos* trust, a settlor must have an intent to create a presently enforceable trust, the trust property must be clearly specified and set aside, and the essential terms of the trust must be clear enough for the court to enforce the equitable duties that are the *sine qua non* of a trust relationship.

76 Am. Jur. 2d *Trusts* § 4 (2014).

# APPLICABLE LAW

## I. Principles of Missouri Trust Law

Missouri courts have long recognized the division of title inherent in the formation of a trust: "[i]t is well settled under Missouri law that '[a] trust is not a legal entity." The trustee is the legal owner of the trust property, in which the beneficiaries have equitable ownership.'" *Thompson v. Koenen,* 396 S.W.3d 429, 435 (Mo. Ct. App. 2013) (quoting *Farris v. Boyke*, 936 S.W.2d 197, 200 (Mo. Ct. App. 1996)). However, Missouri courts also recognize and maintain distinctions between settlors, trustees, beneficiaries and trust assets. *See generally* Mo. Rev. Stat. §§ 456.4-402.1(5) & 456.4-402 (explaining the distinct role of each in the operation of a trust, and providing, for example, that the same person may not be designated as sole trustee and sole beneficiary); *see also United States v. Harrison*, 653 F.2d 359, 361-362 (8th Cir. 1981) (holding under Missouri law that a small family trust was a "formally organized entity, legally distinct" from the husband and wife, who were the settlors and the trustees). Despite these distinctions, trust property is subject to claims against the settlor during the settlor's lifetime. Mo. Rev. Stat. § 456.5-505(1).

The creation of a trust confers benefits as well as obligations. For example, Missouri law not only requires that trustees administer a trust in good faith and for the benefit of its beneficiaries, but also shields trust property from the reach of the trustees' creditors. *See* Mo. Rev. Stat. §§ 456.4-402.1(4), 456.8-801 & 456.5-507.

5

## II. **Assertion of the Privilege**

In civil cases, the Fifth Amendment does not provide an all-encompassing right of refusal to respond to discovery requests. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (holding that there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings). "The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim." *Capitol Prod. Corp v. Hernon*, 457 F.2d 541, 542-543 (8th Cir. 1972) (quotations and citations omitted) (applying Missouri law). In addition, the assertion of the privilege must be more than speculative and imaginary. A party's basis for assertion of the privilege must be a "substantial and real" expression of the "hazards of incrimination." *Id*. at 543 (internal quotations omitted). And the court must determine "from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*.

## III. **Governing Law**

Pursuant to Federal Rule of Evidence 501, in civil cases where state law provides "the rule of decision," state law governs the application of testimonial privileges. Fed. R. Evid. 501. Here, however, the Court relies upon federal as well as Missouri law because Missouri case law recognizes that "'[t]he principles to be followed in applying [the federal constitutional privilege against self-incrimination and the state constitutional provision] are consistent.'" *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 562 (Mo. 2012) (quoting *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 767 (Mo. 1987)); s*ee*

*also State v. Werner,* 9 S.W.3d 590, 595 (Mo. 2000) (holding that "the protection against compelled self-incrimination afforded by the state constitution is coextensive with the right recognized in the federal constitution").

Although the Missouri and federal privileges against self-incrimination are coextensive, Missouri courts have identified a more stringent approach to the evidentiary burdens that apply once the privilege has been asserted.  Under Missouri law, once an individual asserts his constitutional privilege against self-incrimination, a rebuttable presumption arises that his answer might tend to incriminate him.  *Munn,* 733 S.W.2d at 768.  The party seeking the information may rebut that presumption by demonstrating that the response "cannot possibly have a tendency to incriminate the [party claiming the privilege]."  *Id.*  And a court may not "compel production of the information in derogation of the privilege," unless the party moving to compel the answer makes such a demonstration.  *Id.*; *see also State ex rel. Harry Shapiro, Jr., Realty & Inv. Co. v. Cloyd*, 615 S.W.2d 41, 46 (Mo. banc 1981).

## IV.  The Contours of the Privilege against Self Incrimination

The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  Similarly, the Missouri Constitution's analog to the Fifth Amendment provides that "no person shall be compelled to testify against himself in a criminal cause."  MO. CONST. art. 1, § 19.  The privilege may be invoked in civil proceedings "where the answers might be incriminating in future criminal proceedings."  *United States v. Nace*, 418 F.3d 945, 947

(8th Cir. 2005); *see also Nothum*, 380 S.W.3d at 562 (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). And it "extends not only to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in the chain of evidence needed to convict the witness." *Munn,* 733 S.W.2d at 768.

A. The Personal Privilege and the "Collective Entity" Doctrine

The Fifth Amendment privilege is personal – it protects "*an individual* from compelled production of his *personal* papers and effects . . . ." *Bellis v. United States*, 417 U.S. 85, 87 (1975) (emphasis supplied); *see also United States v. White*, 322 U.S. 694, 698 (1944) (explaining that the "constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals"). In light of the personal nature of the privilege, courts hold under the so-called "collective entity" doctrine, that corporations and other "collective entities" cannot claim the privilege against self-incrimination. *See Braswell v. United States*, 487 U.S. 99, 102 (acknowledging that "it is well established that such artificial entities are not protected by the Fifth Amendment").

A corollary of the "collective entity" doctrine prohibits an individual who holds the entity's records "in a representative capacity" from invoking the Fifth Amendment to avoid producing them "even if these records might incriminate him personally." *See Braswell*, 487 U.S. at 110 (explaining that "[a]rtificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand") (internal citation omitted). An individual custodian cannot successfully assert

the privilege on his own behalf because the records are not his, and the entity has no privilege to assert. *Id.* The "collective entity" doctrine applies whether the subpoena is directed to the organization itself or to the custodian in his representative capacity. *See Bellis*, 417 U.S. at 88.

The "collective entity" doctrine and its corollary apply to corporations, "regardless of how small the corporation may be," *id.* at 100, as well as labor unions, partnerships, and trusts. *See, e.g., Braswell*, 487 U.S. at 110 (closely held corporation with three shareholders); *Bellis,* 417 U.S. at 101 (small partnership); *White*, 322 U.S. at 701 (unincorporated labor union); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155,158 (2nd Cir. 2010) (single shareholder corporation ); *United States v. Harrison*, 653 F.2d 359, 361 (8th Cir. 1981) ("small family trust"). *But see United States v. Doe,* 465 U.S. at 612-14 (holding that a sole proprietorship was not a collective entity).

In determining whether the "collective entity" doctrine applies to entities other than corporations, courts are directed to consider whether the rationale for the doctrine applies "with equal force" to the entity at issue.[2] *In re Grand Jury Subpoena Issued June*

---

[2]     Defendants urge the Court to apply an older test first set forth in *White,* 322 U.S. at 701 698. In *Bellis*, however, the Supreme Court rejected that test, opining:

> In any event, we do not believe that the Court's formulation in *White* can be reduced to a simple proposition based solely upon the size of the organization. It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be. . . . Whether corporation or partnership, many of these firms will be independent entities whose financial records are held by a member of the firm in a representative capacity. In these circumstances, the applicability of the privilege should not turn on an insubstantial difference in the form of the business enterprise.

*18, 2009*, 593 F.3d at 158. The Supreme Court has explained the doctrine thus, "[w]ere the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible." *Bellis*, 417 U.S. at 90 (quoting *White*, 322 U.S. at 700) (citations omitted). As one appellate court elaborated,

> First, it prevents the erosion of the unchallenged rule that the [organization] itself is not entitled to claim any Fifth Amendment privilege. Second, it recognizes that the decision to [create such an organization] is freely made and generates benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records [and] it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power.

*In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158-59 (internal citations and quotations omitted).

### B. Compulsion and Testimonial Communication

Only compelled, incriminating communications that are "testimonial" in character are privileged under the Fifth Amendment. *United States v Doe*, 465 U.S. 605, 611(1984) (explaining that "[t]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by [one's] own compelled testimonial communication"). For this reason, "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege."

---

*Bellis*, 417 U.S. at 100.

*United States v. Hubbell*, 530 U.S. 27, 35 (2000).  Where the preparation of the papers sought is "wholly voluntary," compulsion is lacking, and the privilege against self-incrimination does not apply.  *United States v Doe*, 465 U.S. at 611; *see also Fisher*, 425 U.S. at 409-410 (stating that even where subpoenaed papers might incriminate him, individual cannot claim privilege with respect to papers that he or another voluntarily prepared).  In addition, documents prepared for purposes of complying with civil regulatory requirements are not usually deemed testimonial because, in most situations, they will have been disclosed in another context and their present disclosure does not "ordinarily compel the [individual] to restate, repeat, or affirm the truth of the contents of the documents sought."  *Fisher*, 425 U.S. at 409-10.

  C. <u>The Act of Production</u>

  In some cases the Fifth Amendment privilege will not apply to contents of the records sought, but the act of production itself may have "a compelled testimonial aspect" because it communicates the existence, custody, or authenticity of the documents. *Hubbell*, 530 U.S. at 36.  For example, in *United States v. Doe*, the Supreme Court held that the Fifth Amendment did not apply to the contents of the records of a sole proprietorship, but would be applied to the owner's act of producing the records.  *See* 465 U.S. at 612-14; *see also Fisher*, 425 U.S. at 410.

  But not every act of production is protected.  "[I]f the existence, possession, and authenticity of the documents are a foregone conclusion, the privilege is not violated because the act of production is not 'sufficiently testimonial'" to trigger protection under the Fifth Amendment.  *United States v. Rue*, 819 F.2d 1488, 1492 (8th Cir. 1987)

(quoting *Fisher,* 425 U.S. at 411).  An act of production is generally deemed testimonial if it "'explicitly or implicitly, relate[s] a factual assertion or disclose[s] information. Only then is a person compelled to be a 'witness' against himself.'"  *Hubbell*, 530 U.S. at 36 n.19 (quoting *Doe v. United States,* 487 U.S. at 209-210) (footnote omitted).

With respect to records held by a custodian on behalf of a collective entity, courts draw a distinction between compelled document production and compelled oral testimony, in some cases declining to apply the Fifth Amendment to the first action, but not to the second.  *See Curcio* v. *United States,* 354 U.S.118, 123-24 (1957) (holding that "[a] custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian [and must do so]. . . .  But he cannot lawfully be compelled . . . to condemn himself by his own oral testimony.").

## DISCUSSION

## I. Objections Based on the Privilege against Self-incrimination

### A. Assertion of the Privilege

Defendants assert that disclosure of the documents could lead to liability for unpaid taxes and that this assertion, without more, creates a rebuttable presumption that the privilege applies to all of the requested documents.  *State ex rel. Flynn v. Schroeder*, 660 S.W.2d 435, 437 (Mo. Ct. App. 1983).  They further assert that it is Plaintiff's burden to prove that the privilege does not apply here and that Plaintiff has not done so. Essentially, Defendants contend that Plaintiff has not shown, as required, that the documents sought "could not possibly have a tendency to incriminate."  *Flynn*, 660 S.W.2d at 437.

Plaintiff argues that Defendants' invocation of the privilege is not legally sufficient and is premised upon speculation and imagined fear of incrimination. *Hernon*, 457 F.2d at 542. Plaintiff notes that Defendants do not indicate which of the many documents requested are potentially incriminating. Nor do they explain how or why responding to discovery may implicate violations of tax law.

Under the applicable Missouri law, the Court concludes that Plaintiff has not established that the documents sought "could not possibly have a tendency to incriminate." *Flynn*, 660 S.W.2d at 437. The Court notes, however, that, in similar cases where federal law rather than Missouri law was at issue, assertions of incrimination almost identical to Defendants' have been deemed insufficient, as a matter of law, to support a claim of privilege. *See Travelers Commercial Cas. Co. v. Siefleisch Roofing, Inc.*, No. 4:12-cv-1550-DDN, 2013 WL 1899557, at *6 (E.D. Mo. May 7, 2013) (in an ERISA case, rejecting, as "a speculative prospect" inadequate to support invocation of the privilege, the defendants' assertion that responding to discovery might lead to evidence of unpaid taxes); *see also Hernon*, 457 F.2d at 543; *Iron Workers St. Louis Dist. Council Annuity Trust, et al. v. DKW Constr. Co.*, No. 4:10-cv-00192, 2010 WL 3620476, at *1 (E.D. Mo. Sept. 9, 2010) (in an ERISA case, rejecting an assertion of the Fifth Amendment privilege and holding that a judgment debtor "deprived [creditors] of meaningful post-judgment discovery," where judgment debtor invoked an unspecified, general fear of incrimination as the basis for claiming of privilege); *O'Connell v. Penny Plumbing, Inc.*, No. 4:06-cv-1423, 2007 WL 4097740, at *1 (E.D. Mo. Nov. 16, 2007) (holding, in an ERISA case, that judgment debtor did not have blanket Fifth Amendment

privilege where purpose of discovery was to search for assets to satisfy judgment). In addition, the Court notes that this is not a case which poses "inherent dangers of self-incrimination." *Hernon*, 457 F.2d at 542 (noting the absence of such "inherent danger" in the "statutory provisions for disclosure in aid of execution of judgment").

While a close question, applying the strict rebuttable presumption standard applicable under Missouri law, the Court cannot say that Plaintiff has demonstrated that there is no possibility of incrimination. Therefore, the Court will address whether Plaintiff has rebutted the presumption by demonstrating that the privilege does not apply under the circumstances or to the documents at issue.

B. The Trusts as Collective Entities

Relying on several cases in which the "collective entity" doctrine was applied to trusts, Plaintiff contends that the Trusts are "collective entities" and therefore may not claim a privilege against self-incrimination. Defendants disagree, noting several factors that render the "collective entity" doctrine inapplicable here. First, Defendants contend that the Trusts are essentially settlor- or grantor-controlled trusts, not recognized as separate entities under Missouri law, and indistinguishable from the Roberts, the settlors. Defendants also argue that in cases where trusts were deemed "collective entities," the trusts filed independent income tax returns and had more than one settlor or trustee, giving them a more credible claim to an independent identity. On the basis of these distinctions, Defendants assert that the Trusts are not "collective entities."

Relevant precedent convinces the Court otherwise. The most important factor in determining whether a trust is a "collective entity" is neither the size of the entity

14

involved, its remove from the grantor, nor its tax status. *Bellis*, 417 U.S. at 100; *see also*

*In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158. The determinative

factor is whether application of the "collective entity" doctrine to the particular trust is

consistent with the rationale underlying the doctrine. *See Bellis*, 417 U.S. at 90 (noting

the importance of preventing the erosion of the "unchallenged rule that the organization

itself is not entitled to claim any Fifth Amendment privilege").

The Supreme Court has explained that specific indicia like the size or form of a

business enterprise are not determinative.

> "[W]e do not believe that the [test for determining whether a trust is
> a 'collective entity'] can be reduced to a simple proposition based solely
> upon the size of the organization. . . . [T]he applicability of the privilege
> should not turn on an insubstantial difference in the form of the business
> enterprise."

*Bellis*, 417 U.S. at 88.

Applying this principle, the Ninth Circuit has held that a trust's tax status and its

description as a "grantor-controlled" shell entity was "irrelevant" to the application of the

"collective entity" doctrine. *In re Grand Jury Proceedings*, 633 F.2d 754, 757 (9th Cir.

1980) (holding that "treatment for tax purposes is largely irrelevant to the determination of

whether it is an organization separate and apart from its creator"); *see also In re Grand*

*Jury Subpoena,* 973 F.2d 45, 50 n.8 (1st Cir. 1992) (noting that failure to file separate tax

return did not preclude "collective entity" status). Although courts may consider tax

status, they do not deem it determinative of "collective entity status." Instead, "[a]

common thread . . . is that the collective entity doctrine should apply to the records of

persons who purport to act through collective entities even though there may be no true

entity." *United States v. O'Shea*, 662 F. Supp. 2d 535, 545 (S.D. W.Va. 2009); *see also Watson v. C.I.R.*, 690 F.2d 429, 431 (5th Cir. 1982) (holding that the Fifth Amendment privilege did not extend to documents . . . "held by an individual in a representative capacity" because "the fifth amendment privilege is purely personal").

For this reason, Defendants' reliance on *United States v. Harrison,* is misplaced. 653 F.2d at 359. In *Harrison*, the Eighth Circuit concluded that a small family trust in which a husband and wife were the settlors and sole trustees was a collective entity. *Id.* at 362. In its analysis, the Court noted that a tax return was filed on behalf of the trust. Although mentioned, this factor was not dispositive in *Harrison*, nor should it be here. *See id.* at 361-362 (describing the trust as "a formally organized entity, legally distinct from its trustees" and as "a separate business entity [held] . . . out as distinct and apart from the individuals involved"). Rather, the Eighth Circuit's analysis turned on the voluntary and beneficial nature of the decision to create a trust and the concomitant obligations arising from the creation of the trust, such as the need to respond to discovery requests and subpoenas for trust records. *See id.*; *see also In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158.

That rationale is equally applicable here. The Roberts chose to create the Trusts, place assets in the Trusts, and act as trustees. Presumably, they formed the Trusts because they found it beneficial to do so. The law affords them that benefit, but it also requires them to be bound by the consequences of the entities they formed and used. The Roberts cannot now ignore the existence of the trust entities to avoid a concomitant obligation to produce the Trusts' records.

16

The Court concludes that the "collective entity" doctrine applies here and that its corollary does as well. Therefore, the Roberts may not invoke the Fifth Amendment on behalf of themselves or the Trusts to avoid producing the Trusts' records held by them in a representative capacity, as such records "cannot be the subject of the personal privilege against self-incrimination even though production . . . might tend to incriminate them personally.'" *See Braswell*, 487 U.S. at 110 (internal quotation omitted)

C.  Compulsion and Testimonial Communication

Plaintiff further asserts that even if the Trusts are not "collective entities," Defendants may not refuse, on Fifth Amendment grounds, to disclose the contents of all voluntarily created Trust documents prepared before the date on which the Discovery Requests were propounded. Defendants resist, asserting that there is no general principle placing the contents of pre-existing, voluntarily prepared documents outside the protection of the privilege.

The issue is whether the Supreme Court has placed the contents of all "voluntary, pre-existing" business records and papers outside the scope of the privilege or whether they warrant protection because they contain "compelled incriminating communications" that are "testimonial in character." *Hubbell*, 530 U.S. at 34 (internal quotations omitted). And the governing precedent clearly provides that the contents of pre-existing, voluntarily prepared documents, often referred to as business records, and including, but not limited to, tax returns, documents governing the formation of the Trusts, contracts, and conveyances, are not subject to the Fifth Amendment privilege against self-incrimination because they are neither compelled nor, in most cases, testimonial. *See*

*Braswell*, 487 U.S. at 102 (holding that "[t]here is no question but that the contents of the subpoenaed business records are not privileged"); *United States v. Doe*, 465 U.S. 605, 608-09 (noting that the contents of business records ordinarily are not privileged because they are created voluntarily and without compulsion); *Fisher*, 425 U.S. at 409-10 (holding that the content of documents prepared before the issuance of summonses or discovery requests is not deemed testimonial because it "does not compel oral testimony; nor would it ordinarily compel the [individual] to restate, repeat, or affirm the truth of the contents of the documents sought"); *In re Steinberg*, 837 F.2d 527, 530 (1st Cir.1988) (holding that Fifth Amendment privilege applies to the contents of private papers "only in rare situations, where compelled disclosure would break the heart of our sense of privacy").

Defendants nowhere assert that they were compelled to prepare any of the Trust documents. And a review of the Discovery Requests gives the Court no reason to believe that compelled preparation is an issue here. Therefore, even if the Court assumes that the pre-existing, voluntarily prepared Trust documents contain incriminating information, the Fifth Amendment privilege does not apply to the disclosure of the contents of those documents, because they lack the required element of compulsion and a mere request for their contents is not testimonial. *See id.* at 35-36 (noting that it is a "settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege"); *see also Fisher*, 425 U.S. at 409-10 (stating that even where requested documents might incriminate him, an individual

cannot claim the privilege with respect to documents that he or another voluntarily prepared). In addition, many of the documents at issue lack a testimonial character because their existence and authenticity is not at issue and by producing the documents the Trusts are not called upon to reaffirm the accuracy of their contents. *Id.*

Therefore, whether or not the collective entity doctrine applies or the contents of the documents are incriminating, Defendants would be required to produce on behalf of the Trusts, all documents voluntarily prepared prior to the date on which the Discovery Requests were propounded.

D. Incrimination by Act of Production

Defendants also assert that this is a case where the very act of producing the documents should be deemed privileged because it implicitly confirms the existence, possession, or authenticity of the requested documents. *See Hubbell,* 530 U.S. at 36-37; *Doe*, 465 U.S. at 612-13.

The Court agrees that responding to certain of the Discovery Requests, especially Requests 20-35 which seek documents related to the Trusts' interests, if any, in sixteen identified entities, could be deemed a testimonial act insofar as production of the documents would establish the existence of interests that are not presently known to the Plaintiff. *See Hubbell*, 530 U.S. at 36.

Despite the testimonial nature of responding to Discovery Requests 20-35, however, the act-of-production doctrine does not apply here, because neither the Trusts nor the trustees have a Fifth Amendment privilege to assert here. Defendants argue that *Fisher* and *Doe* expanded the act-of-production rule and modified the "collective entity"

holdings so as to permit custodians producing documents on behalf of other entities to claim their personal Fifth Amendment privilege in instances where the act of production might be incriminating. The Supreme Court, however, has explicitly disavowed such an expansion. *See Braswell*, 487 U.S. at 109 & 112 n.5 (holding in this context that "[t]he agency rationale undergirding the collective entity decisions, in which custodians asserted that production of entity records would incriminate them personally, survives [*Fisher* and *Doe*]").

As the Supreme Court explained in *Braswell*, where, as here, the trustees produce documents on behalf of a collective entity, they do so in a representative role rather than their personal capacity and no Fifth Amendment privilege attaches to that act. *See id.* at 111-112. An entity that cannot claim the privilege cannot claim a violation of that privilege arising from the "act of production." *See Fisher*, 425 U.S., at 413 n. 14 (stating that "[i]n these cases [where custodians asserted that production of entity records would incriminate them personally] compliance with the subpoena is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him").

E. Summary of Conclusions

In the Discovery Requests, Plaintiff does not seek any documents regarding property or assets owned or held by the Roberts in their personal capacity. Instead, Plaintiff seeks documents relating to the establishment and operation of the Trusts (Req. No. 1); sales or acquisitions by the Trusts (Req. Nos. 2, 3); taxation of the Trusts (Req. Nos. 4, 5, 6, 12, 19); financial information relating to the Trusts (Req. Nos. 7, 8, 9, 11,

13, 16, 17, 18); property owned by the Trusts (Req. Nos. 10, 14); and entities in which the Trusts may have ownership (Req. Nos. 15, 20-35). "[T]he instruments creating the trusts, books and records of trust income, any bank statements or other records of trust accounts" in the Roberts' possession as trustees are not protected under the Fifth Amendment. *See United States v. Theyerl*, No. 05-CR-113, 2007 WL 2303395, at *4 (E.D. Wis. Aug. 7, 2007). Accordingly, neither the Trusts nor the Roberts can assert the Fifth Amendment privilege to protect against the disclosure of the documents of the Trusts in the possession of the Roberts, as trustees.

## II.  Other Objections to Production

### A.  Overbreadth

The Trusts also assert that the Discovery Requests are overbroad and that the responsive documents "would be voluminous, and consist almost entirely, if not entirely, of documents that are not relevant to Plaintiff's purpose." *See* Doc. No. 48, p. 10. Plaintiff contends that the Trusts as judgment debtors are obligated to produce all documents necessary to permit Plaintiff to ascertain the assets of the Trusts. Therefore, they assert the Document Requests are not overbroad, but are likely to lead to the discovery of relevant evidence as required under Federal Rule of Civil Procedure 26(b)(1). *See Armstrong v. Hussmann Corp.*, 163 F.R.D. 299, 302 (E.D. Mo. 1995) (noting that Rule of Civil Procedure 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case") (internal quotation omitted).

"Bare assertions that the discovery requested is overly broad, unduly burdensome,

oppressive, or irrelevant are ordinarily insufficient to bar production." *See Cincinnati Ins. Co. v. Fine Home Mgrs, Inc.*, 4:09CV234-DJS, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010) (holding that a mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate) (citation omitted). "[T]he party resisting discovery must show specifically how . . . each [request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (internal quotation omitted).; *see also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

The Trusts' mere assertions of "overbreadth" without more, are insufficient. *See Cincinnati Ins. Co.*, 2010 WL 2990118, at *1. Despite their objection they are required to produce those responsive documents whose production would not be burdensome, and specify what is not being produced, as Plaintiff requests here. *See* Fed. R. Civ. P. 34(b)(2)(C) (providing that "[a]n objection to part of a request must specify the part and permit inspection of the rest").

In addition, to the extent that the Trusts object to the Discovery Requests because each request does not specify the applicable time period, Plaintiff suggests and the Court agrees, that with the exception of the documents creating the Trusts, the Trusts should be required to produce all responsive documents dated on or after July 31, 2011, the time frame specified in many of the Discovery Requests.

B. Attorney-Client and Accountant-Client Privileges

The Trusts also object to Requests Nos. 1-11 and 13-35 on the grounds that they seek documents protected by the attorney-client and accountant-client privileges.

Plaintiff asserts, and the Court agrees, that Defendants have not established a foundation for the Court's consideration of these issues. To the extent that they claim either of these privileges with respect to responsive documents, the Trust Defendants must produce redacted documents, where possible, and create a privilege log with respect to those documents that require *in camera* review. Defendants' mere assertion of these privileges is, without more, insufficient.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel is **GRANTED** as set forth below. (Doc. No. 42).

a) Defendants' objections to the Discovery Requests under the Fifth Amendment of the United States Constitution and the corresponding provisions of the Missouri Constitution are **OVERRULED**.

b) Not later than fourteen (14) days from the date of this Order, Defendants shall respond to Discovery Request No. 1 with all responsive documents, and to all other Discovery Requests, not otherwise subject to a claim of attorney-client or accountant-client privilege, by producing all requested Trust documents for the period July 31, 2011, through the date of this Order.

c) Not later than fourteen (14) days from the date of this Order, Defendants shall respond to Discovery Request Nos. 1-11 and 13-35, by producing, where possible, redacted documents for the period July 31, 2011, through the date of this Order, and creating a detailed privilege log to identify those documents covering the aforementioned period for which the attorney-client and accountant-client privileges are claimed,

including an explanation for the claim of privilege with respect to each.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2014.